UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY ALONSO,

       Plaintiff,

v.

HURON VALLEY AMBULANCE,

       Defendant.

_____/

Case No. 09-12547

Honorable Nancy G. Edmunds


**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT [5]**


For the second time, this Court is being asked to determine whether Plaintiff Kimberly
Alonso knowingly and voluntarily agreed to submit her employment-related claims to
Defendant Huron Valley Ambulance ("HVA")'s Grievance Review Board ("GRB") and
whether HVA's grievance review process was fair.  In an earlier action, Case No. 08-14330,
Plaintiff and her husband brought numerous state and federal claims against HVA, all
arising out of their employment relationship with HVA.  In a May 26, 2009 decision, this
Court determined that (1) both Alan and Kimberly Alonso had knowingly and voluntarily
waived their right to a judicial forum and had agreed to submit all of their employment-
related disputes to HVA's GRB for a final and binding decision; (2) the GRB's procedures
comported with elementary fairness;  (3) Alan Alonso's claims against HVA were to be
dismissed with prejudice; and (4) Kimberly Alonso's employment-related claims were to be
dismissed without prejudice because she had not yet presented them to HVA's GRB.  *See
Alonso v. Huron Valley Ambulance*, No. 08-14330, 2009 WL 1469641 (E.D. Mich. May 26,

2009).

Subsequently, on January 20, 2009, Plaintiff Kimberly Alonso was terminated by HVA for benefits fraud; specifically, for repeatedly misusing her intermittent Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., leaves of absence approved for her migraine headaches. Plaintiff followed HVA's grievance review process to challenge her termination. On June 9, 2009, a hearing was held before the GRB. On June 12, 1009, Plaintiff was informed in writing that the GRB had unanimously affirmed her termination. On June 29, 2009, Plaintiff filed this action asserting that (1) HVA improperly interfered with her FMLA leave and retaliated against her in violation of the FMLA when it terminated her; and (2) the GRB's decision affirming her termination should be vacated pursuant to Michigan Court Rule 3.602(J) addressing "statutory arbitration" under Michigan Compiled Laws §§ 600.5001-600.5035.

This matter comes before the Court on Defendant HVA's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); or, in the alternative, for summary judgment pursuant to Rule 56(c). For the reasons stated below, Defendant's motion is GRANTED.

## I.   Facts

Defendant HVA is a non-profit, community-owned organization based in Ann Arbor, Michigan. It provides critical ambulance and educational assistance to the communities it serves. Today, HVA serves all or part of eight counties in south-east and south-central Michigan.

### A.  Employment Application, Manual, Policies and Procedures

2

In 2005, Defendant HVA interviewed Plaintiff, along with others who were interested in working as paramedics for HVA in Monroe County.  On July 8, 2005, Plaintiff Kimberly Alonso signed an Employment Application.  (Def.'s Ex. A.)  On the last page of the Application, in an area blocked off and preceded with the words (in all caps and bolded) "**PLEASE READ THE FOLLOWING BEFORE SIGNING**," there is an exclusive remedy provision providing that:

> Any dispute arising out of or in connection with any aspect of my employment by the Company, or termination thereof, including by way of example but not limitation, disputes concerning alleged civil rights violations, breach of contract or tort, <u>shall be exclusively subject to review by the Grievance Review Board. Any decision of the Review Board shall be binding to both parties, and enforceable in the circuit court.</u>

(*Id.* at 4, ¶ 8 (emphasis added).)  Immediately preceding Plaintiff's signature[1] and handwritten date, there is a paragraph acknowledging that the signer has "read the above statements" and understands them.  (*Id.*)

In August 2005, HVA hired Plaintiff as a part-time Paramedic I.  Shortly thereafter, in connection with HVA's newly assumed Monroe County operations, Plaintiff became a full-time Paramedic I.

In conjunction with her employment, Plaintiff was given HVA's Operations Policies and Procedure's Manual that explains HVA's four-step grievance policy:

> Your supervisor and HVA have a continuing goal of maintaining a work environment where problems and misunderstandings concerning your work will be minimal.  When an occasion does arise where you believe a problem or misunderstanding has developed, explore the following steps in the prescribed order.  This way, you can communicate the exact nature of the problem or misunderstanding so that it may be appropriately resolved.  Your use of the Problem Solving Procedure as outlined below will not prejudice or damage your

---

[1]It is not disputed that Kimberly Haney is now known as Kimberly Alonso.

continued employment prospects, or conditions of employment at HVA. You can also contact Human Resources or the company's Compliance Officer to discuss your situation.

**Step 1**

Discuss the problem with your immediate supervisor.

**Step 2**

If your immediate supervisor is not head of the department and you are not satisfied with the discussion with him or her, you have the right to talk the matter over with your Department Vice President.

**Step 3**

If you are not satisfied with the progress of your complaint, or if there is a valid reason for omitting steps 1 and 2, you have the right to discuss the problem with the President & C.E.O. He or she will discuss the problem with you, and help you resolve the matter.

**Step 4**

If you are not satisfied at the conclusion of Step 3, and have completed the 180-day introductory period, you may request that the matter be heard before a Grievance Review Board (GRB). The GRB will hear both sides of the problem and report their findings and decision. <u>The Board's decision will be final and binding on all parties</u>.

The Grievance Review Board will consist of two representatives chosen by the employee (a line level employee and a supervisor or manager), two representatives chosen by the President and C.E.O. (one a line level employee and one a manager or supervisor) and the fifth individual will be chosen mutually by the employee and President & C.E.O. Representatives may not be a relative or spouse of the employee.

A request for the GRB hearing of a problem will not prejudice the good standing of any employee.

**Timeliness**

Following review of your grievance with your immediate supervisor, each additional step must be requested in writing within seven (7) calendar days. Step 4 (GRB) must be requested in writing to the President.

4

(Def.'s Ex. B (emphasis added).)  The employee is also advised to see "Grievance Review Board Procedures - Administrative Policy No. 415."  (*Id.*)

Administrative Policy No. 415 elaborates on the Grievance Review Board Procedures. Under "Policy," the employee is reminded that "[a] GRB hearing is an aggrieved employee's sole and exclusive remedy and decisions of the Board are final and binding on both the employee and the company.  Additionally, GRB decisions are enforceable in Court." (Def.'s Ex. C, 10/14/08 Update (emphasis added).)

That a hearing before the Grievance Review Board is the aggrieved employee's exclusive remedy for employment-related claims is repeated in the section titled "Procedure."

> 1.   As the final step of any employee grievance relating to any issue of promotion, demotion, compensation, harassment, discrimination, discipline, layoff, recall, termination and/or constructive termination from employment, an aggrieved employee may request a hearing before a Grievance Review Board. Such a hearing before a Grievance Review Board will be the sole and exclusive remedy available to an aggrieved employee, whenever the employee's grievance relates in any way to any such topic.  This procedure shall apply to disputes involving any and all legal claims or theories, including but not limited to claims for defamation, wrongful discharge, breach of contract, negligence, or other tort actions; whistle blower retaliation; or discrimination, harassment and/or retaliation on account of age, sex, sexual orientation, race, color, religion, marital status, disability, height, weight, national origin, citizenship, genetic information or any other classification protected by law.

(*Id.* at 1, ¶ 1 (emphasis added).)

This section also explains how the members of the GRB are selected, the pre-hearing procedures, how the hearing is to be conducted, how a decision is reached, and expressly states yet again that the GRB's decision is final and binding on both the employee and the company.

5.  The aggrieved employee shall select two representatives to sit on the GRB,

one of who shall be a line employee and one who is a Supervisor or Manager. Management shall select two representatives to sit on the GRB, one of who shall be a line employee and one who is a Supervisor or Manager. The employee and the President and C.E.O. shall mutually select a fifth individual. GRB representatives will be paid for their time. The GRB representatives shall select the Chair of the Board at the beginning of the hearing by secret ballot, majority rule. Representatives may not be a relative or spouse of the aggrieved employee, and may only serve on one GRB within any twelve (12) month period. *The Chair will be responsible for maintaining order during the hearing and ensuring that the proceedings are in accordance with this policy and that the Board's decision is in accordance with the grievance.* The Department Vice President (or a designee) and the aggrieved employee shall have the right to be present during all testimony. The Department Vice President (or a designee) will explain the company's position at the outset of the hearing.

6.   A list of any witnesses a party intends to call at the hearing must be forwarded to the Human Resources Manager at least five (5) business days prior to the initial scheduled GRB meeting. The aggrieved employee and management will each make contact and arrange for the appearance of their selected witnesses. (Be advised that the company is unable to require a witness to appear). The Human Resources Manager will provide to each party copies of the witness lists. Each party will have the opportunity to present evidence and arguments, and have the opportunity to reasonably question the witnesses. Witnesses who are employed by the company will be paid for their time in attending the hearing.

7.   The GRB shall decide the grievance on the basis of the evidence presented at the hearing.

8.   The Human Resources Manager (or designee) will electronically record the proceedings and take minutes, but will not be present during the deliberations. The deliberations by the GRB shall not be recorded. However, the findings and final decision of the GRB shall be read into an audio recording device. Management shall maintain the recording, for a minimum of three years. Any action taken by the GRB will also be written and certified by the Chair on forms provided by the Human Resources Manager.

Procedure - During the GRB

1.   The Human Resources Manager will assemble and distribute a packet of information at the beginning of the GRB for the committee to review:

.   List any work rules that have been violated
.   Copies of any disciplinary action and performance evaluation given (if applicable)

6

. The written answer provided to the aggrieved employee by the President and C.E.O. (Step 3)
. The specific grievance of the employee and the remedy that the employee is asking the GRB to consider
. Any other relevant information pertaining to the grievance.

2.  Both the involved employee and management will present their cases, in the following order:

. Opening statement of aggrieved employee
. Opening statement of management (by the Vice President for the Department or designee)
. Witnesses on behalf of the aggrieved employee
. Witnesses on behalf of Management
. Aggrieved employee closing summary
. Management's closing summary
. Aggrieved employee rebuttal

3.  Each party will have the right to present evidence and arguments and the opportunity to question reasonably witnesses who appear at the hearing, provided they hae [sic] been timely identified on the witness list.  Written evidence may be introduced at the hearing by either party, with or without a witness, to be considered by the Board.  Copies of all information distributed during the hearing will be collected by the Administrative Assistant or Human Resources Manager at the conclusion of the hearing.

4.  Any evidence presented must be available for management and the aggrieved employee to review.  Relevant information within an employee's personnel file may be presented as evidence.

5.  All witnesses shall be sequestered from the hearing.  <u>The aggrieved employee and one representative from Management (who is not on the Board) may stay through the entire testimony period.</u>  Neither the company nor employee may request others to attend.

6.  Once both sides have been presented, all persons not on the GRB shall leave the room and the GRB shall deliberate.  *The final decision of the GRB must be a majority decision; a unanimous decision is not necessary.*  The GRB representatives shall determine if the voting procedure is by open or secret ballot.  The Chair of the GRB shall count the votes and put the findings and decision in writing.

7.  Any member of the committee may request that the GRB consult with the President and C.E.O. at any time – including during the deliberation process.  If this consultation is requested during the testimony period of the GRB hearing,

all participants other than the GRB and the President and C.E.O. shall be excused from the room.

8. The aggrieved employee shall be provided all substantive rights and remedies, including any applicable damages provided under any pertinent statute(s) related to his/her claims.

9. The GRB shall put its findings and decision in writing. Copies shall be provided both to the involved employee and to Management. <u>Any decision of the GRB shall be final, binding, and enforceable in the Washtenaw County Circuit Court</u>.

<u>Important</u>: A request for a GRB hearing will <u>NOT</u> prejudice the good standing of the employee.

(*Id.* at ¶¶ 5-9 (italics in original; underlining in all but last sentence added).)

After being hired, Plaintiff attended an orientation. She acknowledged that she had received and understood HVA's employment policies and procedures manual by her signature on a document titled "Record of Receipt" and "Statement of Understanding." Immediately above her signature, this document stated:

I, the undersigned, have received a revised copy of the Operations Policies and Procedures Manual for Huron Valley Ambulance, Inc., and understand that I am responsible for adhering to these Policies and Procedures. I also understand that I am responsible for keeping this manual updated as revisions and/or additions are made.

(Def.'s Ex. D, signed by Plaintiff and dated 8/15/05.)

### B. Plaintiff Kimberly Alonso

The following facts are relevant to the claims Plaintiff Kimberly now asserts against HVA.

### 1. Plaintiff Kimberly's Pre-Termination Use of GRB Process

Plaintiff used HVA's grievance review process a number of times before her January 2009 termination. On May 1, 2007, Plaintiff Kimberly successfully grieved a number of

8

disciplinary employment actions:   (1) a written warning about a run that occurred on January 10, 2007 was dismissed by a majority vote of the GRB; (2) a one-day suspension for a run that occurred on March 28, 2007 was reduced to a written warning; (3) a performance evaluation received on April 5, 2007, resulting in a demotion to Paramedic I and reassignment of stations, was changed by the GRB from "unsatisfactory" to "below standards," resulting in no demotion; and (4) a three-day suspension Plaintiff received on April 17, 2007 was dismissed.  (Def.'s Ex. E, 5/1/07 GRB Decision and Findings.)

### 2.  Plaintiff's FMLA Leave History

Prior to her October 2008 migraine-related FMLA leave, Plaintiff had been approved for and taken other FMLA leaves of absence since being hired in August of 2005.  In September 2006, Plaintiff requested and was approved for intermittent FMLA leave for one year for her sinusitis, TMJ and renal lithiasis medical conditions.  In April 2007, Plaintiff requested and was approved for FMLA leave due to pregnancy complications and the birth of her child.  Her child was born on September 12, 2007, and she returned to work on November 1, 2007.  On December 14, 2007, Plaintiff requested and was approved for intermittent FMLA leave to care for her child until the child's first birthday on September 12, 2008.  One month later, in October 2008, Plaintiff requested and was approved for intermittent FMLA leave for one year for her migraines.  (Pl.'s Ex. 6, GRB Hrg. Tr. at 51-52, 60-61,68-72, 73-75.)

### 3.  Plaintiff's October 2008 Intermittent FMLA Leave For Migraines

In October 2008, Plaintiff obtained the required medical certification from her family practice physician for intermittent FMLA leave for her migraine headaches.  (Pl.'s Ex. 4,

9

10/21/08 Certification Form.)  The information on the certification form reports that Plaintiff

was seen on October 20, 2008 and complained of "TMJ/migraines" that began in June of

2006.  (*Id.*)  On the date of her doctor visit, Plaintiff stated that she had had a migraine "for

four days."  (*Id.*)  It is further reported that Plaintiff cannot determine the frequency of her

migraines, recovery takes "from1-5 days," her migraines are "[t]reated with medication and

rest," and that "when medical condition exacerbates, patient is unable to perform work of

any kind."  (*Id.*)  Plaintiff requested and was granted intermittent FMLA leave for a period

of one year for her migraines.[2]  (*Id.*; Pl.'s Ex. 6, 6/9/09 GRB Hrg. Tr. at 70-71.)

### 4.  Plaintiff's January 2009 Termination and June 2009 Grievance

On January 20, 2009, Plaintiff was terminated for committing benefits fraud based on

evidence showing that Plaintiff had repeatedly misused her one-year, intermittent FMLA

leave of absence approved in October 2008.  (Pl.'s Ex. 5, 2/11/09 letter to Plf. from Dale

Berry, HVA President and CEO.)  Specifically, on three different occasions, while allegedly

being disabled due to migraine headaches, Plaintiff was video-taped driving, running

errands, going to the bank, going to a pawn shop, visiting the post office, getting gas,

---

[2]"Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason."  29 C.F.R. § 825.202(a).  If taken "because of one's own serious health condition, . . . there must be a medical need for leave and it must be that such medical need can be best accommodated through an intermittent . . . leave schedule."  29 C.F.R. § 825.202(b).

The federal regulations further provide that "[w]here it is physically impossible for an employee using intermittent leave. . . to commence or end work mid-way through a shift, such as where a flight attendant or a railroad conductor is scheduled to work aboard an airplane or train, . . ., the entire period that the employee is forced to be absent is designated as FMLA leave and counts against the employee's FMLA entitlement."  29 U.S.C. § 825.205(a)(2).

smoking, traveling to Ohio, and visiting a noisy restaurant with her family.  (Pl.'s Ex. 6, 6/9/09 GRB Hrg. Tr. at 66-67, 79-87.)

After her termination, Plaintiff initiated HVA's grievance review process.  Pursuant to Steps 1 and 2 of that process, Plaintiff attempted to discuss her termination with her immediate supervisor, Mark Irwin, and with HVA's Vice President, Dick Borton.  (Pl.'s Ex. 1, Pl.'s Aff. at ¶¶ 23-27.)  Being unsatisfied, Plaintiff proceeded to Step 3, by discussing her termination with HVA's President and CEO, Dale Berry.  (*Id.* at ¶¶ 28-29.)

On January 28, 2009, Plaintiff met with Dale Berry and HVA's Human Resources Manager, Maryann Voss.  Her goal was to discuss the reason for her termination, resolve any issues about her use of FMLA leave, and to be reinstated.  (*Id.* at ¶ 30.)  Dale Berry informed Plaintiff that HVA had hired an investigator who had followed and photographed her on three different occasions when she had called HVA to report that she was taking FMLA leave due to her migraine headaches.  (*Id.* at ¶ 35.)  In a February 11, 2009 letter to Plaintiff summarizing that January 28, 2009 meeting, Dale Berry informed Plaintiff that, because she had failed to provide him with any information "that would change the company's determination that [she] had committed benefits fraud relating to [her] use of FMLA," the decision to terminate her was being upheld.  (Pl.'s Ex 5, 2/11/09 letter.) Plaintiff then proceeded to Step 4 of HVA's grievance review process.

On February 21, 2009, Plaintiff initiated Step 4 by notifying HVA that she was grieving her termination, was requesting a hearing before the GRB, and was claiming that she had not committed benefits fraud but HVA had violated her FMLA rights when it terminated her. (Def.'s Ex. G, 2/21/09 email.)  Plaintiff also informed HVA and the GRB that she was seeking the following relief:  dismissal of her termination, reinstatement to her prior position

11

as a senior paramedic, reinstatement of wages for time period between termination and reinstatement, actual damages, double damages, attorney fees, and interest. (Pl.'s Ex. 6, 6/9/09 Hrg. Tr. at 31; Def.'s Ex. K, 6/12/09 letter.)

In accordance with HVA policy, the aggrieved employee selects two members of the GRB, the company selects two, and they are to mutually agree on the fifth member. (Def.'s Ex. B.) In May 2009, Plaintiff identified the two HVA employees she wanted to serve as her representatives on the GRB. She also listed five individuals to be considered as the fifth member of the GRB. (*Id.*) HVA subsequently informed Plaintiff that her two choices for the GRB were accepted, identified its choices for its own GRB representatives, rejected Plaintiff's initial suggestions for the fifth member, and suggested ten other employees for her consideration. (Def.'s Ex. H, 5/5/09 email from Maryann Voss to Plaintiff.) After some negotiations back and forth, Plaintiff and HVA agreed on the fifth member of the GRB – Brian Merkle. (*Id.*, 5/8/09 and 5/13/09 emails between Voss and Plaintiff.) Witness lists were exchanged via email. Plaintiff listed eight, including HVA's President and CEO Dale Berry. HVA informed Plaintiff that it did not plan on calling any witnesses that "are not on your list." (Def.'s Ex. J, 6/2/09 email from Voss to Plaintiff.)

The GRB Hearing was held on June 9, 2009. On June 12, 2009, HVA sent Plaintiff a letter notifying her of the GRB's findings that her requested relief should be denied and that the decision to terminate her for benefits fraud should be upheld. The GRB's decision was unanimous. (Def.'s Ex. K, 6/12/09 letter to Plaintiff.) On June 29, 2009, Plaintiff filed this action against HVA.

### 5. Plaintiff's Complaint

Plaintiff's complaint asserts that she was eligible for and did receive intermittent FMLA

12

leave for her migraine headaches in October 2008. (Compl. at ¶¶ 5, 69-70.) She alleges that HVA improperly interfered with her FMLA leave and retaliated against her in violation of the FMLA by terminating her on January 20, 2009. (*Id.* at ¶¶ 73-81.) Plaintiff further alleges that Defendant HVA improperly forced her to waive her FMLA rights in violation of that Act when it (1) terminated her for misuse of her FMLA leave without first requesting that she obtain re-certification concerning her migraine headaches, and (2) required her to submit her FMLA-related claims to the GRB for a final and binding decision. (*Id.* at ¶¶ 82-86.)   In Count II of her complaint, Plaintiff seeks an order vacating the GRB's decision affirming her termination. (*Id.* at ¶¶ 88-107.)

## II.   Standard of Review

Defendant moves for dismissal based in the alternative on Fed. R. Civ. P. 12(b)(1), Rule 12(b)(6) and Rule 56. Because both parties rely on evidence outside of the pleadings, this Court construes the motion as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). When the moving party has met its burden under rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing

13

"all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.   Analysis

This matter comes before the Court on Defendant HVA's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); or, in the alternative, for summary judgment pursuant to Rule 56(c).  Defendant argues that (1) Plaintiff knowingly and voluntarily agreed that HVA's GRB was the exclusive forum for her employment-related claims and that its decision would be final and binding; (2) the FMLA does not prevent Plaintiff's waiver of the right to a judicial forum; (3) the GRB's procedures comport with elementary fairness; and (4) Michigan Court Rule 3.602(J) does not apply to HVA's GRB and thus cannot be used to vacate the GRB's decision.

Plaintiff responds that (1) Defendant's motion is premature; (2) the FMLA expressly prohibits the waiver of FMLA claims; (3) she did not knowingly and voluntarily agree to submit all of her employment-related disputes exclusively to the joint employer-employee GRB where the resulting decision would be final and binding; and (4) the GRB process did not comport with elementary fairness as defined by the Michigan Supreme Court.  The Court begins its analysis with Plaintiff's first argument.

### A.  Defendant's Motion Is Not Premature

Plaintiff has not persuaded the Court that additional discovery is necessary to render a decision.  Defendant's motion requires this Court to examine Plaintiff's employment application, employment manuals, and published policies and determine (1) whether Plaintiff agreed to have the GRB as the exclusive remedy for all her employment-related

disputes; (2) whether the GRB process, as described in those employment documents, comport's with Michigan's concept of elementary fairness; and (3) whether the FMLA expressly prohibits the waiver of FMLA claims.  Contrary to Plaintiff's arguments here, the record evidence is sufficient to answer the first question, and the second and third questions are ones of law for the Court.  *See Renny v. Port Huron Hospital*, 398 N.W.2d 327, 329 (Mich. 1986) (observing that "the question whether the grievance procedure afforded plaintiff elementary fairness [is] a question of law which should not [be] submitted to the jury."); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967 (6th Cir. 2007) (holding that the plaintiff employee had knowingly and voluntarily waived her right to sue her employer for violation of the FMLA in a judicial forum and reversing the district court's denial of her employer's motion to compel arbitration); *Pellow v. Daimler Chrysler Servs. N. Am., L.L.C.,* No. 05-73815, 2006 WL 2540947, *7 (E.D. Mich. Aug. 31, 2006) (holding that FMLA claims are arbitrable).

### B  Plaintiff Knowingly and Voluntary Waived Right to Judicial Forum

The Michigan courts have long recognized that "'[t]he employer can avoid the perils of jury assessment [where the presence of just cause for discharge is disputed] by providing for an alternative method of dispute resolution.'"  *Thornsberry v. North Star Steel Co.*, No. 90-CV-73216, 1991 WL 501465, *3 (E.D. Mich. July 22, 1991) (quoting *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880, 897 (Mich. 1980)).  The Michigan Court of Appeals, applying *Toussaint*, has held that "where a fair grievance procedure, set forth in an employee manual, is used to review an employer's decision to discharge an employee, and results in a final and binding decision, summary judgment on

a wrongful discharge claim, in favor of the employer, is appropriate." *Id.* (citing *Khalifa v. Henry Ford Hosp.*, 401 N.W.2d 884, 890 (Mich. Ct. App. 1986)).

In *Renny*, the Michigan Supreme Court addressed circumstances similar to those presented here. An internal grievance process was established by the employer for all employment-related disputes. The resulting decision was to be final and binding on both parties. The *Renny* Court held that "where an employee has expressly consented to submit a complaint to a joint employer-employee grievance board established by the employer with the knowledge that the resulting decision is final and binding, the decision shall be final unless the court finds as a matter of law that the procedures used did not comport with elementary fairness." *Renny*, 398 N.W.2d at 329.

Despite Plaintiff's claims to the contrary, her "knowing" consent to submit her employment-related complaints to HVA's joint employer-employee grievance review board is established in numerous ways. For example, she signed a document acknowledging that she had received and understood HVA's Operations Policies and Procedures Manual and that she was responsible for keeping the manual updated as revisions or additions were made. (Def.'s Ex. D.) That employee manual describes HVA's four-step grievance policy, and unambiguously states that the GRB's decision at Step 4 "will be final and binding on all parties." (Def.'s Ex. B.) It also advises employees to review HVA's "Grievance Review Board Procedures - Administrative Policy No. 415." (*Id.*) Administrative Policy No. 415 reminds employees that "[a] GRB hearing is an aggrieved employee's sole and exclusive remedy and decisions of the Board are final and binding on both the employee and the company." (Def.'s Ex. C). Plaintiff's awareness of these policies is evidenced by her past

16

use of the GRB process.  (Def.'s Ex. E.)

Despite the above, Plaintiff argues that her waiver of the right to a judicial forum was not knowing and voluntary because (1) her employment documents do not expressly state that she was giving up her right to have a jury consider her employment disputes; (2) she could not revoke her consent; and (3) she was not advised to consult with an attorney before consenting to the GRB alternative dispute resolution process.  Plaintiff's arguments fail for a number of reasons, including her misplaced reliance on her employment application while ignoring her subsequently signed acknowledgment of receipt of HVA's employment manual and her subsequent use of HVA's grievance procedures in the precise manner set out in her employment documents.

This Court considers the following five factors when "determining whether an employee 'knowingly and voluntarily' waived the right" to sue in court: "'(1)  plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.'"  *Seawright v. Am. Gen. Fin. Servs, Inc.*, 507 F.3d 967, 974 (6th Cir. 2007) (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc)).  As shown below, consideration of each of these factors shows that Plaintiff knowingly and voluntarily waived her right to pursue her employment-related disputes in court.

First, Plaintiff here, like the plaintiffs in *Seawright* and *Morrison*, is educated and capable of understanding the terms of her employment agreement.  Not only did she

17

understand the alternative dispute resolution terms of her employment agreement, Plaintiff used them in the precise manner described in that agreement.

Second, despite her claims to the contrary, Plaintiff had ample time between applying for her job and attending orientation to reconsider consenting to HVA's policy of using the GRB as the final and binding decision maker for all employment-related disputes and waiving the right to sue in court. Likewise, she had ample time to consult with an attorney on this issue. Facts weighing against Plaintiff's arguments were recently discussed in a similar case and apply here as well. "Plaintiff did not request extra time to consider the Employee Agreement or to contact a lawyer. Moreover, Plaintiff did not indicate to Defendant he did not understand . . . any portion of the Employee Agreement." *Moore v. Ferrellgas, Inc.*, 533 F. Supp.2d 740, 749 (W.D. Mich. 2008).

Third, despite Plaintiff's claims to the contrary, HVA's employment documents are not required to expressly state that employees are waiving their right to a jury trial. *Id.* (citing decisions). *See also Thornsberry*, 1991 WL 501465 at **1, 3 (granting summary judgment for the defendant employer because the plaintiff employee had grieved the termination decision through a procedure described in the employment manual as "final and binding for the employee and the company"); *Khalifa*, 401 N.W.2d at 887-890 (same). Finally, that Plaintiff and Defendant HVA mutually promised to be bound by the GRB's decisions "is enough to ensure mutuality of obligation and thus constitute consideration." *Seawright*, 507 F.3d at 974.

Plaintiff next argues that the GRB's decision is unenforceable because the GRB process is unfair.

18

### C.  The GRB Procedures Comport With Elementary Fairness

The Michigan Supreme Court's decision in *Renny* governs this fairness issue.[3]  There, the Court observed that it had "recently agreed with the United States Supreme Court that a decision of a joint employer-employee grievance committee should be granted the same deference as that afforded an independent arbiter."  *Renny*, 398 N.W.2d at 337 (citing *Fulghum v. United Parcel Serv., Inc.*, 378 N.W.2d 472 (Mich. 1985)).  It further observed that "[a]n adjudicative determination by either an administrative tribunal or by arbitration may be challenged on procedural grounds."  *Renny*, 398 N.W.2d at 338.  The Court then listed the five essential elements for fair "joint employer-employee grievance committee" proceedings:

1)  Adequate notice to persons who are to be bound by the adjudication;

2)  The right to present evidence and arguments and the fair opportunity to rebut evidence and argument by the opposing argument;

3)  A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status;

4)  A rule specifying the point in the proceeding when a final decision is rendered; and,

5)  Other procedural elements as may be necessary to ensure a means to determine the matter in question.  These will be determined by the complexity of the matter in question, the urgency with which the matter must be resolved and the opportunity of the parties to obtain evidence and formulate legal

---

[3]Plaintiff's employment agreement does not contain an arbitration clause.  Accordingly, her reliance on the discussion in *Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 227-230 (Mich. Ct. App. 1999), about "fairness-related requirements on arbitrators" when the parties' employment agreement has an arbitration clause is misplaced.

contentions.

*Id.* (citing Restatement Judgments, 2d, §§ 83(2) and 84(3)(b)).

Step 4 of HVA's grievance procedure, as evidenced from Plaintiff's use of that procedure in connection with her termination, comports with the *Renny* standards for elementary fairness. First, there is no question that Plaintiff had notice of the challenged GRB procedures because it was her email to HVA that invoked them. (Pl.'s Ex. G, 2/21/09 email.) Second, Plaintiff was allowed to present evidence, witnesses and arguments and to rebut the evidence, witnesses and arguments raised by HVA. (Def.'s Ex. C, "Grievance Review Board Procedures - Administrative Policy No. 415.") Third, Plaintiff was allowed to formulate the issues she wished the GRB to address at the hearing; i.e., that she was wrongfully terminated, that her employer HVA was improperly interfering with her FMLA rights and wrongfully retaliating against her for using her approved FMLA leave, and that HVA should have allowed Plaintiff to obtain her physician's re-certification of her migraines if HVA questioned whether she continued to suffer from debilitating migraine headaches. She was also allowed to present evidence and arguments supporting her requested relief; i.e., that she should be reinstated to her former position and be awarded back pay, actual damages, double damages, interest, and her attorney fees. The issues Plaintiff identified and her requested relief were addressed at the GRB hearing. (Pl.'s Ex. 6, 6/9/09 GRB Hrg. Tr.) Fourth, the GRB procedures provided for deliberation by the GRB after hearing from the aggrieved employee and her witnesses, HVA management and its witnesses, and rebuttal from Plaintiff. (Def.'s Ex. C.) As required under HVA's grievance review procedures, Plaintiff was informed in writing of the GRB's findings and final decision three

20

days after the hearing.  (Def.'s Ex. K, 6/12/09 HVA letter; Def.'s Ex. C.)  HVA's grievance procedures also require that the GRB hearing be electronically recorded and that the findings and final decision of the GRB be read into an audio recording device that is saved for at least three years.  (Def.'s Ex. C.)  Plaintiff received a copy of the GRB hearing transcript.  (Pl.'s Ex. 6.)  Fifth, similar to the grievance process approved by the court in *Thornsberry*, the method for choosing the GRB at issue here "helped to ensure a fair determination" because  "[t]wo members were selected by [the employer], two by [plaintiff employee], and one by mutual agreement by plaintiff and defendant [employer].  Such a procedure provided for an equal, if not neutral, . . . review board."  1991 WL 501465 at *5. Also similar to the grievance process approved in *Thornsberry*, Plaintiff was allowed to appear at the hearing, to make arguments, and to question witnesses.  Likewise, the GRB's decision "was final and binding upon both parties."  *Id.*

Contrary to Plaintiff's arguments here, fairness does not require that she be represented by counsel at the GRB hearing.  Likewise, fairness does not require that she have a neutral arbitrator, a full-range of discovery similar to that available in litigation, and suffer no interruptions when presenting her arguments before the GRB.  Similar arguments were rejected in *Khalifa*, 401 N.W.2d at 897-98, and *Thornsberry*, 1991 WL 501465 at * 6 (observing that a grievance board is "not required to act as a court of law would in hearing a wrongful discharge case. . . . Indeed, plaintiff's argument as to law and burdens would, if accepted, replace the 'elementary' concept of the *Renny* fairness requirements with a 'procedural' concept of fairness equivalent to court proceedings.").

Having determined that Plaintiff's waiver of a judicial forum was knowing and voluntary

21

and that the GRB procedures comport with elementary fairness, the Court now addresses Plaintiff's claim that the FMLA precludes the waiver of her FMLA rights.

### D. Plaintiff's "Waiver" Arguments

Relying on federal regulations enforcing the FMLA, Plaintiff argued before the GRB that her termination must be reversed and argues here that the GRB's decision must be vacated.   Plaintiff is mistaken.   It is not disputed that the FMLA prohibits HVA from interfering with Plaintiff's legitimate use of her FMLA leave and from retaliating against Plaintiff for that use.   *See* 29 C.F.R. § 825.220.   Likewise, it is not disputed that the federal regulations provide that "[e]mployees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA."   *Id.* at § 825.220(d).   Plaintiff's arguments, however, that the FMLA precludes her waiver of a judicial forum or that HVA's grievance review process improperly forces her to waive rights afforded her under the FMLA lack merit.

The federal courts have observed that the FMLA does not preclude the waiver of the right to a judicial forum.   For example, in *Seawright v. American General Financial Services*, 507 F.3d 967 (6th Cir. 2007), the Sixth Circuit upheld an employee's knowing and voluntary waiver of her right to sue her employer for violating her FMLA rights in a judicial forum.   In *Pellow*, 2006 WL 2540947 at *7, under facts similar to those presented here, this Court held that FMLA claims are arbitrable.   Plaintiff has not presented the Court with contrary authority.   She has not identified any FMLA language or case law supporting her claim that an employee cannot agree to have her FMLA-related claims submitted to a joint employer-employee grievance board for a final and binding decision.   As discussed above,

22

Plaintiff has not convinced this Court that HVA's grievance review process is unfair.  As discussed below, she has not shown that her knowing and voluntary agreement to submit her FMLA claims to the GRB resulted in the waiver of any substantive rights or remedies available under that Act.

Contrary to her arguments here, Plaintiff was not forced to waive any substantive rights or remedies available to her under the FMLA.  At the GRB hearing, Plaintiff presented evidence and arguments on her claims that Defendant HVA had interfered with her FMLA rights and retaliated against her for taking FMLA leave when it terminated her. HVA provided opposing evidence and arguments.  Specifically, Plaintiff argued that, because HVA doubted the continuing validity of the serious medical condition that gave rise to her intermittent FMLA leave – migraine headaches, it should have requested recertification of that condition rather than terminating her.  *See* 29 C.F.R. § 825.308.  She argued at the GRB hearing and continues to argue here that she cannot be forced to waive the opportunity to have her medical condition recertified and any attempt by HVA to do so violates her FMLA rights.  Defendant HVA responded that Plaintiff has consistently misconstrued the reason for her termination.  It informed Plaintiff and the GRB that Plaintiff was terminated for benefits fraud in connection with her intermittent FMLA leave.  It was not contesting that Plaintiff continued to suffer from migraine headaches.  Rather, it terminated Plaintiff because she was not using her migraine-related FMLA leave for that purpose and was lying to HVA about it.  HVA presented evidence to Plaintiff and the GRB supporting that claim.  The GRB, apparently finding HVA's evidence and arguments persuasive, unanimously upheld HVA's decision to terminate Plaintiff's termination for

23

FMLA-related benefits fraud.

### E.  Michigan Court Rule 3.602(J) Does Not Apply

Plaintiff also argues that the GRB's decision upholding her termination should be vacated because it does not comply with the requirements set out in Michigan Court Rule 3.602(J) for statutory arbitration agreements.  Plaintiff's employment documents do not contain an arbitration agreement.  Accordingly, Plaintiff's reliance on a Michigan Court Rule that governs statutory arbitration under Michigan Compiled Laws §§ 600.5001-600.5035 is misplaced.

## IV.  Conclusion

For the above-stated reasons, Defendant's motion is GRANTED.  Plaintiff's claims are DISMISSED WITH PREJUDICE.


                    s/Nancy G. Edmunds
                    Nancy G. Edmunds
                    United States District Judge


Dated:  December 14, 2009


I hereby certify that a copy of the foregoing document was served upon counsel of record on December 14, 2009, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer
                    Case Manager


24